285 S.E.2d 899 (1982)
Sammy S. SERRENO
v.
The WEST VIRGINIA CIVIL SERVICE COMMISSION, Willard H. Erwin, Jr. Chairman, and Charles M. Kincaid and Reece Browning, Members.
No. 15148.
Supreme Court of Appeals of West Virginia.
January 19, 1982.
*900 Johnston, Holroyd & Gibson and Randal W. Roahrig, Princeton, for appellant.
Chauncey H. Browning, Jr., Atty. Gen., Richard L. Withers, Sp. Asst. Atty. Gen., Legal Div., Dept. of Welfare, Charleston, for appellees.
PER CURIAM:
This is an appeal by Sammy S. Serreno from an order of the Circuit Court of McDowell County which affirmed a ruling of the West Virginia Civil Service Commission upholding the appellant's dismissal from employment with the West Virginia Department of Welfare. We granted this appeal to determine whether the record supported the Commission's finding that the appellant had been guilty of misconduct justifying dismissal. After examining the record we conclude that the evidence did not support dismissal, and we reverse the decision of the Circuit Court.
By letter dated June 13, 1979, the appellant was dismissed from his position as a social worker with the West Virginia Department of Welfare. Among other points the letter alleged that the appellant had breached client confidentiality and that he had received public money to which he was not entitled.
The appellant appealed the dismissal to the West Virginia Civil Service Commission. The Commission conducted hearings on the issues presented and concluded that the appellant had allowed unauthorized persons to accompany him on official visits to potential welfare recipients in violation of the Department's policies of confidentiality. The Commission also found that on at least one, and probably two, occasions the appellant had reported excess mileage and that as a consequence he had received public money not due him. At the conclusion of the hearing the Commission upheld the dismissal.
From the decision of the Civil Service Commission the appellant appealed to the Circuit Court of McDowell County. The circuit court reviewed the Commission's record *901 and determined that the Commission had erred in finding that the appellant had actually wrongfully received public money. The court, however, found that the appellant had submitted at least one incorrect mileage report and concluded that the submission of the incorrect report warranted dismissal. The court also found that the appellant was aware of the Department's policy of confidentiality and that there was sufficient evidence to demonstrate that he had breached that policy. Having concluded that the evidence demonstrated that the appellant's dismissal was warranted, the court affirmed the decision of the Civil Service Commission.
In Syllabus point 1 of Oakes v. W. Va. Dept. of Finance and Administration, W.Va., 264 S.E.2d 151 (1980), we said:
"W.Va.Code, 29-6-15, requires that the dismissal of a civil service employee be for good cause, which means misconduct of a substantial nature directly affecting the rights and interest of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without wrongful intention."
See, Guine v. Civil Service Commission, 149 W.Va. 461, 141 S.E.2d 364 (1965).
The record of the case before us demonstrates that the appellant had worked for the Department of Welfare for over twenty-two years when he was dismissed. His prior disciplinary record was not introduced during the proceedings before the Commission, and we are unable to say whether prior to dismissal he had ever been charged with falsifying mileage records or violating the Department's policy of confidentiality.
Regarding the mileage allegation, the record shows that the appellant's position with the Department of Welfare required that he travel extensively in his private automobile. For that travel he submitted mileage vouchers. Upon the basis of the vouchers he was reimbursed by the State. For travel during March, 1979, he submitted a number of vouchers which showed that on March 6 he had traveled 112 miles, on March 7 he had traveled 243 miles, and on March 12 he had traveled 238 miles. After the vouchers were submitted an investigator for the Department reenacted the trips between the points indicated on the vouchers and found that he traveled 78 miles between the March 6 points, 158 miles between the March 7 points, and 161 miles between the March 12 points. During the hearing the investigator revealed these discrepancies to the Commission. He testified that he had made the trips during the spring and summer and that there were no problems with the roads and that he had no trouble in locating the houses which had been the objects of the appellant's trips.
The appellant testified that when he had actually made the trips in March, 1979, that he had become lost on several occasions and that he had encountered bad road conditions due to weather. He denied that he had falsified vouchers. He further testified that the administrator who had discharged him had revised his in-State expense account and that he could not state that the vouchers filed actually reflected the mileage which he initially reported. In the course of the hearing the Commissioners checked the three distances in issue on a State map. They found that the map revealed that the appellant was correct on one of the distances, that the investigator was correct on one, and that while neither the appellant nor the investigator was correct on the third, the investigator was closer to being correct.
The charge that the appellant had breached the Department's policy of confidentiality developed out of the appellant's visits to the homes of two potential welfare clients, Mr. Hatten and Mr. Tilley. Mr. Hatten proposed to adopt a child. The evidence indicates that the appellant had met him at a post office near the Hatten home. Shortly after they met, an unidentified man approached Mr. Hatten, called him by name, and asked to use his telephone. Mr. Hatten agreed, and the appellant and unidentified man got into Hatten's car and proceeded to the Hatten house. Mr. Hatten invited both into the house. The man remained in the house while the appellant *902 talked with Mr. Hatten. During the hearing Mr. Hatten stated that he did not feel that the appellant discussed anything in the presence of the man which was of a confidential nature. The evidence regarding the Tilley incident indicated that the appellant was having difficulty locating the Tilley residence. He asked a young man in the neighborhood. The young man indicated that he was going in the direction of the Tilley home. The appellant followed him. Both entered the Tilley home. The only evidence regarding what occurred in the Tilley home was the testimony of the appellant. He said that he gave Mr. Tilley medical forms but did not discuss anything of a confidential nature.
It is evident from an examination of the record on the mileage question that, at worst, the appellant's mileage vouchers were incorrect for two days. Three sets of mileage figures were adduced for one of those days, and the fact that the figures of the Commission and the investigator do not match for one day throws substantial doubt on whether the appellant's figures for that day were actually incorrect. During the hearing the appellant indicated that he had encountered bad road conditions and that he had become lost. Of necessity, he had had to backtrack. There was no evidence that in over twenty-two years of employment the appellant had ever previously submitted an incorrect mileage voucher. Oakes v. W. Va. Dept. of Finance and Administration, supra, requires that a violation sufficient to support a dismissal be of a substantial nature and that if it involves a violation of a statute or official duty it must be done with wrongful intent. There was no showing during the hearing before the Civil Service Commission that the appellant's actions regarding the vouchers was done with sufficient intent to support criminal charges. The action was plausibly explained, and there was no showing that it was more than an isolated incident occurring after many years of employment. In the absence of more preponderating evidence demonstrating wrongful intent, we cannot under the fact of the appellant's long employment conclude that the falsification charge was sustainable.
Likewise we believe that the record on the confidentiality point demonstrates that while the appellant technically violated a Department policy regarding confidentiality by allowing outsiders to accompany him on visits to welfare recipients, it does not show that he substantially violated that policy in that it fails to demonstrate that he conducted any business of a confidential nature in the presence of the outsiders.
We conclude that the Department of Welfare failed to demonstrate that the appellant was guilty of conduct sufficiently serious to warrant dismissal under the holding in Oakes v. W. Va. Dept. of Finance and Administration, supra, and we believe that the circuit court, in affirming the Commission's holding affirming the appellant's dismissal, erred.
While dismissal was unjustified under the evidence presented, our finding does not preclude other disciplinary action, short of dismissal, against the appellant.
Accordingly the judgment of the Circuit Court of McDowell County is reversed.
Reversed.