375 S.E.2d 775

**Helen (Polly) DROWN, Appellant,**

**v.**

**WEST VIRGINIA CIVIL SERVICE COMMISSION and West Virginia Department of Veterans Affairs, Appellees.**

**No. 18536.**

Supreme Court of Appeals of West Virginia.

Nov. 23, 1988.

---

**144**

Alexander J. Ross, Rosalee Juba Plumley, Ross, Brown & Juba, Charleston, W.Va., for Drown.

Edward L. Bullman, Asst. Atty. Gen., Charleston, W.Va., for Veterans Affairs, West Virginia Civil Service Com'n.

PER CURIAM:

Helen (Polly) Drown appeals from the final order of the West Virginia Civil Service Commission (Commission) upholding the appellant's dismissal from employment with the Department of Veterans' Affairs (Department). We granted this appeal to determine whether the record supported the Commission's finding that the appellant had been guilty of misconduct justifying dismissal. After examining the record, we conclude that the evidence did not support a dismissal and we reverse the decision of the Commission.

By letter dated December 30, 1986, Ms. Drown was dismissed from her position as an Audit Clerk III at the Barboursville Veterans' Home. Among the charges were allegations that Ms. Drown's dereliction of duty enabled Marilyn Taylor, an employee under her direct supervision, to embezzle $29,000 from the Veterans' Home Trust Account between 1983 and 1985.

Ms. Drown appealed the dismissal to the Commission. During a hearing before the Commission, Ms. Drown presented evidence that her work evaluations had always been good to excellent; that due to lack of staff, she was only able to "spot check" Ms. Taylor's work; and that she had requested additional staff to properly carry out the fiscal division's responsibilities.

The Department admitted that Ms. Drown did not participate in the embezzlement nor have prior knowledge of or condone Ms. Taylor's acts. Ms. Drown argued that her dismissal by Veterans' Home Director, John W. Moon, was influenced by a personality conflict between them that had existed since 1983. This started when she along with a group of Veterans' Home employees met with officials in Charleston shortly after Mr. Moon's appointment as director to voice concern over his policies.

The Commission found that Ms. Drown was negligent in the performance of her assigned duties and responsibilities. Its finding relied primarily upon Ms. Drown's misplaced trust in Ms. Taylor's honesty. Specifically, Ms. Drown allowed Ms. Taylor to choose check vouchers to be reviewed and to prepare the "tapes" upon which account reconciliations were based. Ms. Taylor never showed her the vouchers on which checks were written in excess of the information supported by the vouchers. The Commission, therefore, concluded that good cause existed for her dismissal.

We reviewed the civil service statute in *Oakes v. West Virginia Dept. of Fin. & Admin.,* 164 W.Va. 384, 264 S.E.2d 151 (1980), and said in Syllabus Point 1:

"W.Va.Code, 29–6–15, requires that the dismissal of a civil service employee be for good cause, which means misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without wrongful intention."

*See Guine v. Civil Serv. Comm'n,* 149 W.Va. 461, 141 S.E.2d 364 (1965).

In *Oakes,* the Postmaster of the Capitol Post Office was dismissed because a subordinate employee failed to timely deliver two registered letters to the Purchasing Division of the Department of Finance and

Administration. The letters contained bid proposals required for submission prior to the bid openings set for a specific time. The record disclosed no participation in or sanction of the late delivery of the mail by the postmaster, nor did he fail to give adequate instructions to subordinate employees. We reversed his dismissal.

■ "Good cause" for dismissal will be found when an employee's conduct shows a gross disregard for professional responsibilities or the public safety. Conduct rising to this level was shown in *West Virginia Dept. of Corrections v. Lemasters*, 173 W.Va. 159, 313 S.E.2d 436 (1984). There, a building maintenance supervisor at the West Virginia Penitentiary at Moundsville sold firearms to a felon convicted three times for armed robbery. The sale occurred within twenty-four hours of the prisoner's release from the penitentiary. Shortly after the sale, the felon was arrested on charges of possession of deadly weapons and public intoxication. We cautioned that "[a]lthough it is true that dismissal is inappropriate when the employee's violation is found to be merely a technical one, it is also true that seriously wrongful conduct can lead to dismissal even if it is not a technical violation of any statute." 173 W.Va. at 162, 313 S.E.2d at 439.

■ Ms. Drown's conduct as a supervisor must be evaluated in light of Syllabus Point 2 of *Oakes*, where we followed the majority rule and held:

"A public employee is ordinarily not chargeable with the negligent acts or omissions of his subordinate unless he participates in such acts or otherwise sanctions them."

We, however, commented: "This rule of qualified liability does not permit a public employee in a supervisory position to escape the consequences of the defaults in misfeasance of his subordinates by ignoring such conduct. In his supervisory role, he has a duty to exercise reasonable care to keep himself informed of the work performance of his subordinate employees." 164 W.Va. at 388, 264 S.E.2d at 153.

■ It is evident from the record that during Ms. Drown's lengthy employment with the State, she received regular promotions and numerous commendations for her services, including time spent above and beyond regular working hours. As in *Oakes*, the record reflects no prior history of disciplinary proceedings, reprimands, or problems with Ms. Drown's supervisory duties. The Commission chiefly relied on Ms. Drown's failure to discover Ms. Taylor's dishonesty and in not devising a more foolproof plan for checking on Ms. Taylor. Her failure was her reliance upon Ms. Taylor's honesty.

We believe the Commission failed to take into account Ms. Drown's prior good record of service and also did not evaluate the reasonableness of her actions in the context of working conditions at the Veterans' Home. The Home's fiscal department was responsible for all patient accounts, business accounts, and billings which in 1984–1985 entailed 8,217 postings done manually by two employees. Ms. Drown repeatedly requested additional employees and computerization of the cumbersome system. She often worked overtime and would forego her vacation. Both her supervisor and Director Moon were aware of these overburdened conditions by their signatures on her annual reviews which contained requests for additional employees. The Commission's decision appears to place responsibility on Ms. Drown for the lack of sufficient personnel when this was her superior's responsibility.

We conclude that there was insufficient evidence to establish good cause for the dismissal. We follow our long established standard, explained in *Blake v. Civil Serv. Comm'n*, 172 W.Va. 711, 712, 310 S.E.2d 472, 473 (1983), that "a civil service commission final order will be reversed if its findings are not supported by, or are contrary to the evidence, or if it is based on a mistake of law. *Crawford v. Erwin*, [171] W.Va. [7], 297 S.E.2d 206 (1982); *Vosberg v. Civil Serv. Comm'n*, [166 W.Va. 488, 275 S.E.2d 640 (1981)]; *Guine v. Civil Serv. Comm'n, supra; Yates v. Civil Serv.*

*Comm'n,* 154 W.Va. 696, 178 S.E.2d 798 (1971)."

While the dismissal was unjustified under the evidence presented, our finding does not preclude other disciplinary action. W.Va.Code, 29–6–15 (1977); *Serreno v. West Virginia Civil Serv. Comm'n,* 169 W.Va. 111, 115, 285 S.E.2d 899, 902 (1982). The "spot checking" system might not have failed but for Ms. Drown allowing Ms. Taylor to select the material audited. This error in judgment is good cause for a suspension which may be imposed on remand.*

Accordingly, the order of the Civil Service Commission is reversed and the case is remanded.

REVERSED AND REMANDED.

---

* Ms. Drown requests back pay and attorney's fees. Since this matter is being remanded for further consideration as to the disciplinary action to be taken, we decline to discuss the back pay and attorney's fees issues. We do note that reasonable attorney's fees would be appropriate under the single Syllabus of *Barnes v. Public*

*Serv. Comm'n,* 172 W.Va. 232, 304 S.E.2d 685 (1983): "*W.Va.Code,* 29–6–15 (1977) authorizes the Civil Service Commission to award attorney fees to a civil service employee as a remedy where the action taken by the appointing authority was too severe but was with good cause."